## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| CHRISTOPHER COOK,<br>　　Plaintiff, | ) ) ) ) | |
| v. | ) ) | C.A. No. 21-368-JJM-LDA |
| NEW ENGLAND POWER COMPANY<br>D/B/A NATIONAL GRID AND PRO<br>UNLIMITED, INC.<br>　　Defendants. | ) ) ) ) ) | |

### MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Chief Judge.

This matter involves an alleged violation of the Rhode Island Fair Employment Practices Act ("FEPA"), subsection 7 (R.I. Gen. Laws § 28-5-7), brought by Plaintiff Christopher Cook against his former employers, Defendants New England Power Company ("National Grid"), and Pro Unlimited ("PRO"). Mr. Cook alleges that National Grid and PRO violated FEPA by wrongfully discharging him based on his criminal record. Following discovery, both Defendants moved for summary judgment under Fed. R. Civ. P. 56. Because Mr. Cook cannot be considered an applicant, the Court GRANTS summary judgment for both Defendants. ECF Nos. 41 and 43.

## I.    BACKGROUND

In August 2020, Robert Poche, an employee of National Grid, offered Mr. Cook a job at the Field Point Liquefaction Project in Rhode Island. ECF No. 49 at 3. During their initial phone call, Mr. Cook mentioned that he had been arrested in May

2018. *Id.* Mr. Poche replied that "everybody has something from the past" and told Mr. Cook to arrive "on site" and begin work on August 24, 2020. ECF No. 17 at 2. Mr. Cook began working for National Grid through a contractor, Sky Testing Services, Inc. ("Sky Testing"). *Id.*

Later that month, Mr. Poche informed Mr. Cook that National Grid had received his completed application, including his arrest record. *Id.* at 3. At no time did anyone at National Grid speak with Mr. Cook about his arrest record. *Id.* Mr. Poche then spoke with another National Grid employee, who advised that Mr. Cook would be on the project for "at least a year." *Id.*

Shortly after that, National Grid switched workforce management contractors from Sky Testing to PRO.[1] *Id.* PRO then asked Mr. Cook to submit to a background check, which he did not pass. *Id.* at 4. National Grid informed PRO that the Mr. Cook was not eligible for employment based on his arrest record. *Id.* He sued under R.I. Gen. Laws § 28-5-7(7), the "ban the box" provision of FEPA, arguing that National Grid and PRO illegally fired him based on the arrest record.

## II.    STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment must be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Specifically,

---

[1] Sky Testing and PRO are contingent workforce management companies that handle the hiring and management of employees and independent contractors for employers.

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When deciding whether to grant summary judgment, the Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour v. Dynamics Rsch. Corp.*, 63 F.3d 32, 36 (1st Cir. 1995) (citation omitted).

"[M]ere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "Genuine" means that the evidence is such that a reasonable jury could resolve for the non-moving party. "Material" means that the fact might affect the outcome under the governing law. *Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 748 (1st Cir. 1994) (internal quotation marks and citations omitted).

## III.    DISCUSSION

### A.    FEPA Claim Against PRO

#### 1.    Was Mr. Cook an "applicant" under FEPA?

FEPA generally prohibits employment discrimination based on "race or color, religion, sex, sexual orientation, gender identity or expression, disability, age, or country of ancestral origin." R.I. Gen. Laws § 28-5-7. Mr. Cook does not allege that his employer discriminated against him because he was a member of any of these classes, but points to § 28-5-7(7), which states:

> It shall be an unlawful employment practice [f]or any employer to include on any application for employment . . . a question inquiring or to otherwise inquire either orally or in writing whether the applicant has ever been arrested, charged with or convicted of any crime . . . .

When a case involves statutory interpretation, the Court must first look to the plain meaning of the statute. *Campbell v. Washington Cnty. Tech. Coll.*, 219 F.3d 3, 6 (1st Cir. 2000). When there is no ambiguity as to the meaning of the words in the statute, the analysis should end there. *Id.* The text of the statute makes it clear that an employer violates R.I. Gen. Laws § 28-5-7(7) only when they ask whether the applicant has been arrested, charged, or convicted of any crime as part of an employment application.

The undisputed facts here make it clear that PRO never asked Mr. Cook whether he was ever arrested, charged, or convicted of any crime on his application for employment because Mr. Cook was not an applicant—he was already in the position. In fact, Mr. Cook acknowledges that he had already accepted the position to work for National Grid via Sky Testing when he was terminated by National Grid.[2] ECF No. 49 ¶¶ 17-18, 21 (stating that Mr. Cook accepted Sky Testing's terms of employment and began work on August 24). Mr. Cook continued to work for National Grid when it switched contingent workforce management companies to PRO. During the transition period, PRO sent Mr. Cook an offer of employment. *Id.* ¶ 24. Mr. Cook

---

[2] The Court has no position on whether it was appropriate for National Grid to fire Mr. Cook based on his past involvement in the criminal justice system. The sole question before the Court is whether the "ban the box" provision FEPA offers Mr. Cook any protection from the actions of the Defendants. The Court holds that it does not.

accepted the position, with conditions. *Id.* ¶ 25 (on September 15, 2020, "[Mr.] Cook accepted the terms of PRO's offer on the condition that he be compensated for his travel back to Louisiana. Later that day, [the employer] agreed to [Mr.] Cook's request . . ."). Part of the onboarding process with PRO included a background check, which Mr. Cook authorized, *after he had accepted the employment offer. Id.* ¶¶ 26-27. That background check flagged Mr. Cook's arrest record, resulting in his ultimate termination. *Id.* ¶¶ 30-37.

Because Mr. Cook had already been offered employment by PRO, and he accepted that offer, he was not an applicant at the time of his termination, barring his claim under subsection 7 of FEPA.

### 2. Are PRO's emails "inquiries" under FEPA?

The relevant language of R.I. Gen. Laws § 28-5-7(7) states:

> It shall be an unlawful employment practice [f]or any employer to include on any application for employment . . . a question inquiring or to otherwise inquire either orally or in writing whether the applicant has ever been arrested, charged with or convicted of any crime . . . .

Mr. Cook argues that the statute was violated by an email he received from PRO following his background check. *See* ECF No. 17 ¶ 22. The email stated: "We are offering you the opportunity to provide any relevant, additional information that will assist us in the review process so that we may determine your suitability for the position in question." ECF No. 44-20 at 2. Mr. Cook also claims that a prohibited inquiry occurred in internal emails between PRO employees discussing how to proceed. ECF No. 17 ¶¶ 23, 24; ECF No. 44-21 at 2-3.

The undisputed facts show that PRO internally discussed how to handle Mr. Cook's employment considering the results of the background check. ECF No. 44-21 at 2-3. But Mr. Cook was already working for Sky Testing—and therefore National Grid—at the time that his payroll was moved to Defendant PRO. ECF No. 49 ¶ 21. Mr. Cook knew that PRO's offer of continued employment depended on completing the background check. *Id.* ¶ 24. And Mr. Cook volunteered the information about his arrest when PRO asked if he wanted to provide "any relevant, additional information" regarding the arrest. *Id.* ¶ 31.

The plain language of the statute prohibits a potential employer from questioning an applicant as to their arrest record at the application stage. That is not what has happened here. Mr. Cook never filed an application with PRO. Nor was he asked about his arrest record, whether he had been charged, or whether he had been convicted of a crime. PRO retrieved the disqualifying information from a background check after he had accepted the offer to continue his current job, and then substantiated it with information volunteered by Mr. Cook.

For these reasons, the Court GRANTS PRO's Motion for Summary Judgment. ECF No. 43.

### B.    FEPA Claim Against National Grid

#### 1.    Was Mr. Cook an "Applicant" under FEPA?

R.I. Gen. Laws § 28-5-7(7) is violated only when an employer asks whether the applicant has been arrested, charged, or convicted as part of the employment application. To have a viable claim, Mr. Cook must prove that he was still an

applicant for National Grid at the time the background check was authorized. The record shows that he was not an applicant because he had already accepted the job.[3]

Sky Testing contracts to provide employment services for National Grid, and Mr. Cook conceded that he worked for National Grid for a month before his transfer to PRO. ECF No. 49 ¶¶ 18-24. In anticipation of the transfer, Mr. Cook was told that he was not being terminated, and that his duties at the job would remain the same. ECF No. 50 ¶ 25. As far as Mr. Cook was concerned, the only change was who would process his payment. *Id.* ¶ 26. During the transfer process, a background check flagged Mr. Cook's arrest history. *Id.* ¶ 29. Because of this background check, National Grid terminated his employment. *Id.*

A person cannot be an "applicant" for a position they have already accepted. Because National Grid had already hired Mr. Cook at the time of the inquiry of his criminal record, he does not meet the applicant status necessary to be protected by the statute. The Court thus GRANTS National Grid's Motion for Summary Judgment. ECF No. 41.

---

[3] Because he is not an "applicant," the Court need not consider whether the act of running a background check is an unlawful "inquiry" under FEPA.

## IV.     CONCLUSION

Because Mr. Cook was not an applicant at the time of the inquiry about his criminal record, and there was no prohibited inquiry under the statute, the Court GRANTS summary judgment for both Defendants.  ECF Nos. 41 and 43.


IT IS SO ORDERED.

John J. McConnell, Jr.
Chief Judge
United States District Court


July 31, 2024